UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LUSTA JOHNSON,

    Plaintiff,

    v.

ELIZABETH MILLS, KIMBERLY
SCHNEIDER, DOUGLAS KRUSE,
JACOB JOLLIFF and PAUL KELLEY,

    Defendants.

Case No. 17-cv-252-JPG

# **MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 78) of Magistrate Judge Mark A. Beatty recommending that the Court grant the defendants' motion for summary judgment (Doc. 69). Plaintiff Lusta Johnson objects to the Report (Doc. 85), and the defendants have responded to that objection (Doc. 86).

**I.    Report Review Standard**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**II.    Background**

This case arose after Johnson, at all relevant times an inmate at the Federal Correctional Institute in Greenville, Illinois ("FCI-Greenville"), injured his left foot in late 2014. An October 2014 x-ray showed no fracture, but Johnson continued to suffer pain and swelling. He was

eventually diagnosed in October 2015 with multiple fractures and treated, including being referred to a podiatrist. He was then transferred to another prison in April 2016. He continues to suffer adverse consequences from his injury although it has healed, and he attributes his continuing problems to the delay in diagnosis and treatment beginning in October 2014.

The defendants were part of the FCI-Greenville medical staff: Elizabeth Mills and Kimberly Schneider were physician's assistants; Douglas Kruse was a doctor; and Jacob Jolliff and Paul Kelley were nurses. Johnson alleges in this lawsuit that they were deliberately indifferent to the serious medical needs presented by his foot injury in violation of the Eighth Amendment. He claims that that deliberate indifference delayed in his treatment and caused the foot problems he continues to suffer today.

## III. Report and Objections

The Court reviews the matter *de novo*. In the Report, Magistrate Judge Beatty gives a detailed accounting of the medical care provided to Johnson for his foot injury, including each specific instance of involvement by a defendant. Johnson does not take issue with any of the specific factual events set forth in the Report. The Court need not restate those events here; they are completely and accurately set forth in the Report, as is the relevant law applicable to this case.

As for the legal question of whether any defendant violated the Eighth Amendment, Magistrate Judge Beatty concludes that Johnson's foot injury presented a serious medical need but that none of the defendants were deliberately indifferent to Johnson's need during their involvement with his care. Specifically, Magistrate Judge Beatty finds that the involvement of nurses Jolliff and Kelley was limited to recording information from the podiatrist Johnson saw and to carrying out the podiatrist's orders, which appeared to be consistent with the use of

2

reasonable medical judgment. Between the two of them, they recorded information about Johnson's podiatrist visits and carried out in a timely manner the podiatrist's orders for x-rays, follow-up appointments, and equipment that would allow Johnson to avoid placing weight on his injured foot—a wheelchair. The Court agrees with Magistrate Judge Beatty for the reasons set forth in the Report that no reasonable jury could find Jolliff or Kelley were deliberately indifferent to Johnson's medical needs related to his foot.

With respect to Mills, Schneider, and Kruse, Magistrate Judge Beatty likewise finds no evidence of deliberate indifference. His conclusion is correct. With respect to PA Mills specifically, who most often saw Johnson, she evaluated him at each visit, ordered tests, relied on doctor's assessments that appeared to be in the exercise of appropriate medical judgment, prescribed treatment, changed treatments when it became apparent a treatment was not working, and persistently investigated the cause of Johnson's continuing problems, including requesting an MRI and podiatrist referral. When she received written requests for care from Johnson, she instructed him on what he needed to do to see a medical provider. None of her conduct displays the conscious disregard for Johnson's problems that is necessary to establish deliberate indifference.

With respect to PA Schneider, like Mills, she adjusted Johnson's medications when it became apparent they were not working, and responded to his written requests for care by telling him how to get it. A reasonable jury could not find Schneider was deliberately indifferent to Johnson's medical needs.

With respect to Dr. Kruse, when he saw Johnson, he examined his foot, ordered diagnostic tests that resulted in negative results, and directed Johnson to follow up with the health care unit as necessary. He further reviewed Johnson's chart, relied on radiology

3

assessments that appeared to be in the exercise of appropriate medical judgment, and supervised others who provided Johnson medical care. After the podiatrist visit was scheduled, Kruse advised Johnson to continue his current treatment of pain medication and a walking boot until he saw the podiatrist. No evidence suggests Kruse ever disregarded Johnson's foot complaints or failed to respond to his medical needs in an inappropriate way.

It is unfortunate that the defendants failed to recognize Johnson had a broken foot until long after the injury. However, they did not disregard his foot injury, relied on radiologist's opinions that appeared reasonable, and repeatedly tried to investigate the cause and to treat the injury. There is simply no evidence to show that any failure to provide a correct diagnosis or effective treatment was a product of deliberate indifference.

As for Johnson's specific objections to the Report, they are not convincing. Some of his objections are to principles of law regarding summary judgment or deliberate indifference that Magistrate Judge Beatty correctly states and applies. For example, Johnson suggests that a defendant seeking summary judgment must present evidence negating an essential element of a plaintiff's claim. However, contrary to Johnson's assertions, a defendant can carry its summary judgment burden by pointing to an absence of evidence to support an essential element of the plaintiff's case without actually submitting any evidence, thus shifting the burden to the plaintiff to point to supporting evidence to prove that essential element. *See* Fed. R. Civ. P. 56(c)(1)(B); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013). That is what the defendants in this case did, and in response Johnson failed to present evidence of deliberate indifference.

Johnson also disputes Magistrate Judge Beatty's statement that doctor's treatment decisions are "presumptively valid." Magistrate Judge Beatty's statement was to explain that it is not an Eighth Amendment violation for a doctor to be negligent, only deliberately indifferent.

4

A doctor's professional medical decision, while possibly negligent, does not rise to the level of deliberate indifference unless it was "blatantly inappropriate" or "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006); *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). The decisions in this case were not.

Other objections are immaterial. For example, Johnson objects to Magistrate Judge Beatty's description of the limited scope of a nurses authority to treat patients. However, the scope of a nurse's authority to provide care cannot change the fact that there is no evidence suggesting the nurse defendants in this case were deliberately indifferent to Johnson's foot injury once they learned of it.

Similarly, Johnson clarifies that he did not complain of foot problems in his intake evaluations when he first arrived at the prison because he had not yet been injured. He also contests Magistrate Judge Beatty's statement the he never said how his foot injury occurred or to whom he reported it. However, the onset date and cause of Johnson's foot problem do not shed any light on whether the defendants' conduct was unconstitutional once they later learned of the injury.

Finally, Johnson disputes whether the "continuous care" cited in the Report was actually a deliberate stalling tactic, but he has pointed to no evidence supports such speculation.

IV. **Conclusion**

After a *de novo* review, and for the foregoing reasons, the Court:

- **ADOPTS** the Report in its entirety (Doc. 78);
- **OVERRULES** Johnson's objections (Doc. 85);

5

- **GRANTS** the defendants' motion for summary judgment (Doc. 69);

- **DENIES as moot** the defendants' motion to vacate the current trial schedule (Doc. 83); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   January 14, 2020**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
